UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Trio Manufacturing, Inc. and Darrell Quade,

Plaintiffs,

v.

Civ. No. 01-1934 (JEL/JGL)
ORDER

Federated Mutual Insurance Company,

Defendant.

---

Charles B. Harris, Esq., Doar, Drill & Skow S.C., appeared for Plaintiffs Trio Manufacturing, Inc. and Darrell Quade.

Katherine A. McBride, Esq., Meagher & Geer P.L.L.P., appeared for Defendant Federated Mutual Insurance Company.

---

This is an action by an insured, Trio Manufacturing, Inc. (Trio Manufacturing), and the owner of the insured, Darrell Quade, against an insurer, Federated Mutual Insurance Company (Federated), for breach of a commercial property insurance policy. Trio Manufacturing and Quade allege that Federated breached the policy by denying in part Trio Manufacturing's claim for the payment of a loss it had sustained as the result of a fire. The matter comes before the Court on Federated's Motion for Summary Judgment.[1] At issue is whether Trio Manufacturing is barred from recovering under the policy because of Quade's refusal to comply with Federated's requests for information and documents. The Court concludes that a genuine issue of material fact exists as to whether there has been "a substantial and material lack of cooperation" by Trio Manufacturing, *Rieschl v. Travelers Ins. Co.*, 313 N.W.2d 615, 617 (Minn. 1981), and it therefore denies Federated's motion.

---

[1] After the hearing on Federated's motion, Federated submitted a letter requesting permission to supplement the record with a sworn statement by Howard Gacksetter. The Court hereby grants this request.

JAN 3 0 2003
·CHARD D. SLETTEN, CLERK
·GMENT ENTERED______
·PUTY CLERK'S INITIALS______

## I. SUBJECT MATTER JURISDICTION

The Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1332(a)(1), 1441 (2000).

## II. BACKGROUND

Quade is the sole proprietor of Trio Industries, a company engaged in the business of molding rubber mats and selling resin compound. Quade is also the sole owner of Trio Manufacturing, a corporation that pays Trio Industries' labor costs. Trio Manufacturing is the named insured on a commercial property insurance policy issued by Federated. The property covered by the policy includes a rubber- and resin-mixing facility and personal property located on Main Street in Fridley, Minnesota. Neither Trio Manufacturing nor Quade has ever owned an interest in the facility; it is owned by InterNorth Management Group (InterNorth) and leased by Rubber Research. Trio Manufacturing and Quade do, however, own some of the equipment and raw materials located at the facility. The policy identifies InterNorth as the party entitled to payment from Federated in the event of a loss.

A fire occurred at the facility on October 23, 1999. After Federated was notified of the fire, it directed Rainbow Cleaning & Restoration (Rainbow) to estimate the cost of repairing and restoring the facility. On December 6, 1999, Rainbow returned an estimate of $180,964.78, exclusive of the cost of several "open" and "bid items."[2] Quade did not like Rainbow's representative. According to Quade, Rainbow was "very pushy," and it "insinuated that [it] would go to the fire marshal and have the [facility] shut down." Quade contacted a Federated

---

[2] The following items were designated as "open" or "bid items" on Rainbow's estimate: paint walls, electrical, "R&R Wall" insulation, overhead crane repair, scaffolding and lifts, and permit.

agent and asked whether he had to hire Rainbow. The agent informed him that he could hire anyone who charged an amount comparable to the amount of Rainbow's estimate.

On December 11, 1999, Quade obtained an estimate from Books Electric, Inc. (Books), a company that had performed work for Quade in the past. Books's estimate of $305,008.55 included the cost of a number of items that were either not listed on Rainbow's estimate or listed as "open" or "bid items" on Rainbow's estimate. Quade hired Books to repair and restore the facility.

At some point between December 11, 1999, and May 17, 2000, Federated issued a check made payable to Trio Manufacturing, InterNorth, and Books. The record is unclear as to the date on which the check was issued, and it is unclear whether the check was in the amount of $119,000 or $139,055. The Court will refer to this check as the Initial Payment.

Federated sent an inspector to the facility on March 2, 2000, to determine whether Books had completed the work listed on its estimate. The inspector took several photographs of walls that appeared not to have been cleaned and areas that appeared not to have been painted. Between March 2, 2000, and May 17, 2000, Federated conducted a second inspection of the facility. The inspector reported that no additional work had been done, and that the facility appeared to be in essentially the same condition it had been in during the first inspection.

At some point in March 2000, Federated requested that Trio Manufacturing provide a sworn proof of loss statement. On April 3, 2000, Trio Manufacturing submitted a statement indicating a total loss of $302,786. When asked to support its claim, Trio Manufacturing submitted Books's estimate and an invoice from Books dated March 30, 2000, showing a total amount due of $302,786.

Federated examined Quade under oath on May 17, 2000. Pursuant to a request by Federated, Quade produced several documents prior to the examination, including deposit tickets identifying the customers of Trio Manufacturing and Trio Industries, various tax returns from 1997, 1998, and 1999, a business record indicating the revenue generated by Quade's businesses during a portion of 1998 and all of 1999, and Quade's personal and business portfolios and checking accounts.

At the examination, Quade stated that with the exception of some crane repairs, Books had finished repairing and restoring the facility by April 3, 2000. When asked to identify who had performed the work, Quade could name only his brother, Warren Quade, and the owner of Books, Mike Books. When presented with the photographs taken by the Federated inspector, Quade stated that he did not know whether all of the walls had been cleaned. He also stated that the photographs did not necessarily convince him that the walls had not been cleaned, explaining that oil, dust, and talc present in the facility could have stuck to the walls after they were cleaned. As for the photographs depicting areas that appeared to be unpainted, Quade stated that he did not know whether those areas had been painted, and did not know whether Books had charged him for painting those areas. Federated also questioned Quade about his use of the Initial Payment. Quade reported that he had deposited the funds into a checking account held by Trio Industries, and that he had paid Books approximately $20,000.

During the examination, Federated requested the following information and documents from Quade: (1) the names, addresses, and telephone numbers of Trio Industries' employees since January 1, 1999; (2) a list of employees, contractors, and subcontractors who worked for Trio Manufacturing and Trio Industries in 1999 and 2000; (3) a list of Trio Industries' customers; (4) a copy of a checking account ledger indicating the amount of Quade's business

expenses by category; (5) a copy of a checking account ledger and checkbook reflecting Quade's disbursement of the Initial Payment; (6) receipts showing Books's purchases of materials used to perform electrical work at the facility; (7) an executed authorization form allowing Federated to speak with Mike Books; (8) information as to when the facility was operating while Books was cleaning and painting; (9) an itemization of the $39,500 charge for "electric bid" on Books's invoice; (10) Rubber Research's utility bills prior to the fire; (11) bills and invoices justifying the $11,559 charge for "gas, heaters, electric bill" on Books's invoice; (12) documents verifying all of the charges on Books's invoice; (13) documents verifying the $700 charge for "train car moving" on Books's invoice; and (14) an executed authorization form allowing Federated to speak with Warren Quade.

By letter dated June 6, 2000, Federated reiterated its request for the information and documents listed above, and instructed Quade to sign and return a transcript of his examination. Quade did not respond. Federated sent a second letter to Quade on July 20, 2000, requesting production of the information and documents within 15 days. Quade did not respond. Federated sent a third letter of August 11, 2000, this time requesting production of the information and documents within 10 days and informing him that failure to do so could result in the denial of Trio Manufacturing's claim. Quade did not respond. Federated requested production of the information and documents yet again by letter dated October 2, 2000. The letter stated that if Quade did not comply with Federated's request within seven days, Federated would assume that Trio Manufacturing was intentionally refusing to comply with its duties under the policy. Again, Quade did not respond. Federated denied Trio Manufacturing's claim on November 16, 2000, based on its failure to comply with policy provisions establishing the duties of the insured in the event of a loss.

Trio Manufacturing and Quade commenced this action in Minnesota state court in October 2001, claiming that Federated breached the policy when it denied Trio Manufacturing's claim. Federated removed the action to this Court on the basis of diversity of citizenship, and now moves for summary judgment.

## III. DISCUSSION

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party satisfies its burden, Rule 56(e) requires the nonmoving party to come forward with "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). When the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no "genuine issue for trial." *Id.* In determining whether summary judgment is appropriate, a court must view the evidence in the record and the inferences to be drawn from it in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

In support of its motion, Federated argues that Quade's failure to produce the requested information and documents constitutes a material breach of the policy, and that Trio Manufacturing is therefore barred from recovering under the policy as a matter of law. Federated bases its argument on the following policy provisions:

**E. LOSS CONDITIONS**

The following conditions apply in addition to the Common Policy Conditions and the Commercial Policy Conditions.

. . . .

**3. Duties In The Event Of Loss Or Damage**

**a.** You [Trio Manufacturing] must see that the following are done in the event of loss or damage to Covered Property:

. . . .

(6) As often as may be reasonably required, permit us [Federated] to inspect the property proving the loss or damage and examine your [Trio Manufacturing's] books and records.

. . . .

(8) Cooperate with us [Federated] in the investigation or settlement of the claim.

**b.** We [Federated] may examine any insured under oath, while not in the presence of any other insured and at such times as may be reasonably required, about any matter relating to this insurance or the claim, including an insured's books and records. In the event of an examination, an insured's answers must be signed.

The parties agree that this case is governed by Minnesota law. Under Minnesota law, "it is well-settled that [an insurer raising the defense of noncooperation by an insured] has the burden of proving a substantial and material lack of cooperation resulting in substantial prejudice to its position." *Rieschl*, 313 N.W.2d at 617; *see Juvland v. Plaisance*, 96 N.W.2d 537, 540 (Minn. 1959) (framing issue as "whether the alleged [noncooperation] constitute[s] a material breach of the cooperation clause and whether such breach was of such gravity as to have adversely affected insurer's interest in a substantial way"). Whether there has been a substantial and material lack of cooperation by an insured is a question of fact. *Rieschl*, 313 N.W.2d at 617; *Juvland*, 96 N.W.2d at 541.

The evidence in this case is mixed on the question whether there was a substantial and material lack of cooperation. To some extent, Trio Manufacturing did cooperate with Federated. For example, Trio Manufacturing permitted Federated to inspect the facility on two occasions. It submitted a sworn proof of loss statement and supporting documents at Federated's request. Quade produced several documents prior to his examination at Federated's request, including deposit tickets, tax returns, business records, and documents related to his personal and business portfolios and checking accounts. Quade also submitted to an examination under oath, during which he answered all questions posed by Federated.

On the other hand, Quade failed to comply with Federated's repeated requests for information and documents after his examination. In defense of his failure to comply, Quade explains that much of the material sought by Federated either does not exist or is not in his control. He notes, for example, that Federated asked him to produce information as to when the facility operated while Books was cleaning and painting, even though he had testified at his examination that he could not identify such a period. Similarly, Quade asserts that he does not have any documents verifying the charges listed on Books's invoice, and that he does not have Rubber Research's utility bills.

Taking the record as a whole and viewing it in the light most favorable to Trio Manufacturing and Quade, the Court concludes that a rational trier of fact could find that Federated has failed to sustain its burden of proving a substantial and material lack of cooperation. Because the record discloses the existence of a genuine issue of material fact, Federated's motion is denied.

## IV. CONCLUSION

Based on the files, records, and proceedings herein, and for the reasons stated above, IT IS ORDERED THAT:

1. Defendant Federated's Motion for Summary Judgment [Docket No. 19] is DENIED.

Dated: January 30, 2003

JOAN ERICKSEN LANCASTER
United States District Judge